UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ------------------------------------------------------- x | | |
| | : | **Civil Action** |
| **JOSEFA CASTILLO,** | : | |
| Plaintiff, | : | |
| | : | **Case Number: 21-cv-00007** |
| -v- | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| Defendant. | : | **Jury Trial is Demanded** |
| | : | |
| ------------------------------------------------------- x | | |

## COMPLAINT

Plaintiff JOSEFA CASTILLO, by her undersigned attorney, for her Complaint against Defendant, the United States of America, alleges as follows:

### PRELIMINARY STATEMENT

1. Every IRS employee is tasked with protecting taxpayers' confidential information. An unauthorized release of confidential taxpayer information is unlawful and gives rise to civil damages. Ms. Castillo suffered damages and lost her right to judicial review of an erroneous IRS tax assessment when Defendant -- knowingly and in violation of all standards of reasonable care -- sent her confidential tax return information to an unauthorized person. This unauthorized disclosure violated several tax laws, and left Ms. Castillo with a tax debt in excess of $80,000, which she does not owe and cannot pay. This has caused possible suspension of her United States Passport, suspension of her NY State driver's license, physical injury, mental anguish, humiliation, embarrassment, aggravation, and emotional distress, for which she hereby seeks statutory, actual, and punitive damages, along with reasonable costs and attorney's fees pursuant to I.R.C. § 7431.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. §§ 1331 & 1346 (claim against the United States for money damages) as an action arising under 26 U.S.C. § 7431.

3. Venue is appropriate under 28 U.S.C. § 1391(e) as the Plaintiff resides in the Bronx, New York.

## PARTIES

4. The Plaintiff is an individual who resides in the Bronx, New York.

5. The Defendant is the United States of America.

## STATEMENT OF FACTS

### Ms. Castillo's IRS Collection Due Process Proceedings

6. On February 13, 2018, the IRS issued a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under I.R.C. § 6320 relating to an alleged underpayment of Ms. Castillo's 2014 federal income taxes.

7. Shortly thereafter, Ms. Castillo retained Victor J. Molina as her attorney and requested a review of the Notice of Lien Filing in an IRS Collection Due Process ("CDP") Hearing.

8. On September 25, 2018, unhappy with Mr. Molina's services, Ms. Castillo:

   a. revoked his authority to receive her confidential information and represent her before the IRS, by sending a written revocation to the IRS CAF Unit in Memphis, TN and to IRS Settlement Officer Theresa Brideson, the IRS agent assigned to Ms. Castillo's CDP Hearing, and;

      b.    authorized Elizabeth Maresca and law students of Lincoln Square Legal Services, Inc ("LSLS") to be her authorized representatives before the IRS, by faxing an executed IRS Form 2848, Power of Attorney Form ("POA") to the same CAF Unit and Ms. Brideson.

9. The fax to Ms. Brideson stated that LSLS was Ms. Castillo's representative and would appear on her behalf at the CDP Hearing.

10. Ms. Brideson received and acknowledged the revocation of the Molina POA, and the filed LSLS POA. Copies of both documents are contained in her file.

11. At the CDP Hearing on September 26, 2018, Brideson spoke with LSLS and verbally confirmed receipt of both the revocation of the Molina POA and the filed LSLS POA.

12. On or about October 11, 2018, LSLS spoke again with Brideson.

13. On October 12, 2018, the IRS acknowledged receipt of the revocation of the Molina's POA and stated it was effective October 2, 2018.

14. On October 19, 2018, LSLS faxed and mailed a letter to Brideson about the issues in the CDP, with a copy of the LSLS POA attached. Brideson failed to respond.

15. On November 13, 2018, LSLS sent Brideson another letter. Again, Brideson failed to respond.

16. From December 22, 2018 to January 25, 2019, the federal government was shut down due to a lapse in appropriations. Upon information and belief, Brideson and her supervisor, Valerie Downs, were furloughed during this period.

17. After the shutdown LSLS waited in vain for a response to its repeated inquiries. In March and April 2019, LSLS left voicemail messages for Brideson asking about the status of Ms. Castillo's case. Once again, Brideson failed to respond.

18. On September 18, 2019, LSLS ordered and reviewed Ms. Castillo's IRS transcript and learned from it for the first time that the IRS had acted in the CDP Hearing.

19. On October 8, 2019, LSLS filed Ms. Castillo's Petition for Lien Action under Section 6320(c) in the United States Tax Court, challenging the IRS collection actions and the erroneous tax assessment underlying the CDP case as she does not owe the taxes, penalties, and interest for the year 2014.

20. The IRS' Answer to the Petition attached a copy of its final Notice of Determination dated December 11, 2018 which showed that the IRS sent a copy of it to Mr. Molina, not LSLS.

### **Defendant's Unauthorized Disclosure**

21. Only upon receiving the Answer did Ms. Castillo learn that the IRS mailed her Notice of Determination to Mr. Molina in December 2018, although his authority to receive her confidential return information ended on October 2, 2018.

22. There was no deadline for Brideson to issue the Notice of Determination.

23. To date, the IRS never informed Ms. Castillo that it released her confidential return information to an unauthorized person.

24. Before the IRS sent the Notice of Determination to Mr. Molina, it was reviewed and approved by Brideson and Downs. Both signed the IRS Appeals Transmittal and Case Memo that approved and acknowledged that the Notice of Determination would be sent to Mr. Molina.

25. The Notice of Determination contained Ms. Castillo's confidential return information, including her name, social security number, new home address, the IRS determination in her CDP case and, most notably, the date of the Notice, which began the period of limitations during which she could petition the Tax Court to challenge the erroneous tax assessment.

26. Since neither Ms. Castillo nor LSLS received the Notice of Determination, she was unable to petition the Tax Court to review the IRS' determination within the 30-day period in I.R.C. § 6330(d).

27. The IRS moved to dismiss the Tax Court case for untimeliness and the Tax Court granted the Motion for lack of jurisdiction.[1] A Tax Court proceeding is the only opportunity for Ms. Castillo to challenge the erroneous tax assessment in court without full payment or filing a bankruptcy petition and bringing an adversary proceeding under 11 U.S.C. § 505.

28. The IRS instituted collection actions against Ms. Castillo after the Tax Court case was dismissed. It levied her bank accounts and sent her a Notice informing her that the U.S. State Department was prohibited from issuing or renewing her United States Passport due to her delinquent federal tax debt.

29. The New York State Department of Taxation made a tax assessment based on information the IRS provided to them and, as the NY state tax bill remains unpaid, revoked her NYS driver's license.

30. The unpaid taxes that the IRS erroneously assessed relate to Castillo Seafood, a business entity that Ms. Castillo sold entirely in 2009 and had no affiliation with in 2014. The 2014 income tax return filed by Castillo Seafood reports the income that the IRS wrongly attributed to Ms. Castillo and reports that another individual was the 100% owner of the business.

---

[1] The Tax Court's final dismissal of the case for lack of jurisdiction is on appeal in the United States Court of Appeals, Second Circuit. That matter relates to the issues in the CDP Hearing, to wit, the IRS collection actions and Ms. Castillo's challenge to the erroneous underlying tax assessment.

**Damages**

31. Ms. Castillo had been trying to resolve the tax dispute for over three years and took every step in her capacity to fix the situation. She began by hiring a private attorney, that she could not afford, and later reached out to the Civil Legal Advice and Resource Office ("CLARO"), where volunteer lawyers assist low-income New Yorkers. CLARO referred Ms. Castillo to LSLS, where she spent countless hours on the phone communicating, answering questions, and making many trips to the office on public transit for in-person meetings.

32. The IRS' error in sending a copy of the Notice of Determination to Mr. Molina instead of to LSLS effectively deprived Ms. Castillo of judicial review of the IRS' erroneous tax assessment and allowed the IRS to reinstate collection actions.

33. When Ms. Castillo first learned that her Notice of Determination was sent only to Mr. Molina and that she could no longer dispute the tax bill, she was distraught. She felt defeated and afraid.

34. Ms. Castillo is emotionally and physically consumed by the effects of the IRS' error. She expended countless hours and energy trying to resolve it.

35. Her days are plagued with thoughts of owing an enormous tax debt that she cannot pay. Her daily tasks are adversely affected, and her eating habits noticeably changed. She finds comfort in food and over-eats due to the stress and worry caused by the IRS' error.

36. It has also adversely affected her sleep. At night she regularly finds herself struggling to relax and to fall asleep. Her thoughts drift to her tax nightmare and she worries about the uncertainty that it brings to her life. She only sleeps 3 or 4 hours a night due to these tax issues and, as a result, relies on sleeping aids.

37. Although Ms. Castillo had pre-existing high blood pressure, the sleep deprivation and emotional anguish caused by the tax issues exacerbated her condition.

38. This tax issue has negatively impacted her mental health. She feels so embarrassed, that she cannot share this information with her healthcare providers, fearful that they will not believe that she doesn't owe the tax debt.

39. Fearful and humiliated, she has discussed the situation with only one close friend and her daughter. Both acknowledge that Ms. Castillo is no longer the happy person she was before the tax issues arose.

40. Due to the IRS Notice regarding the effect of the tax debt on her passport, Ms. Castillo believed that she could not leave the country. When her mother fell terminally ill, she was too scared to go visit her in the Dominican Republic, petrified that she would be unable to return to the United States. Her mother ultimately passed away and Ms. Castillo did not get to see her before she died because of these tax issues.

41. Ms. Castillo is also fearful to visit her brother, sister, nieces and nephews, all of whom live abroad, due to her fear of being unable to return to the United States.

42. Ms. Castillo is extremely fearful of conflict with the government, which is informed by her upbringing in another country. She worries that any indebtedness to the government puts her safety at risk and includes the possibility of being deported and/or arrested.

43. When sending the Notice of Determination to Mr. Molina, Brideson and Downs ignored important and well-established protocols, laws, and rules, including:

    a. Section 6013 of the Internal Revenue Code, which prohibits officers and employees of the United States from disclosing return information -- a taxpayer's identity, the source, or amount of their income, tax liability, tax withheld, deficiencies,

7

and whether the taxpayer's return was, is being, or will be examined or subject to other investigation -- obtained in any manner in connection with their service as an officer or an employee;

    b. IRS protocols and rules which stress the importance of taxpayer confidentiality to all its employees, all of whom receive regular training, and are tasked with knowing the importance of protecting confidential return information;

    c. IRS protocols and rules which required agents to engage in a serious inquiry before making a disclosure; failure to conduct such an inquiry constitutes a failure to comply with their responsibilities to protect taxpayer confidentiality;

    d. IRS Publication 4761 which mandates that all IRS employees prepare all correspondence carefully and review all correspondence before sending, to ensure that the text and all enclosed materials are intended for the recipient; and

    e. Section 7803(a)(3) of the Internal Revenue Code which requires that all IRS employees be familiar with and act in accord with taxpayer rights, including the right to privacy and confidentiality.

44. Brideson was consistently made aware that LSLS was the authorized representative through repeated phone calls and letters, and there was no deadline pressuring Brideson to issue the Notice of Determination.

45. Brideson and Downs had no reasonable basis for believing that Mr. Molina was authorized to receive Ms. Castillo's confidential return information. LSLS had repeated contact with Brideson, she acknowledged them as Ms. Castillo's authorized representatives, and her file contains multiple letters from them and many copies of the LSLS POA.

46. Brideson and Downs knew that they were only permitted to send the Notice of Determination to Ms. Castillo's authorized representative.

47. Brideson and Downs failed to carry out necessary and required precautions prior to making the unauthorized disclosure to Mr. Molina. They violated their obligations; and failed to consult the statutory language as interpreted and reflected in IRS regulations and manuals prior to making the disclosure.

48. Brideson and Downs knowingly released Ms. Castillo's confidential return information to an unauthorized individual and acted with negligence, gross negligence, and extreme disregard for the law, regulations, and IRS protocols.

49. Brideson and Downs failed to act with good faith. Their acts and omissions were highly unreasonable and an extreme departure from the standard of ordinary care.

50. Ms. Castillo is entitled to statutory, actual, punitive damages, and reasonable costs and attorney's fee due to the IRS' unauthorized disclosure of her confidential return information.

## **CLAIM**

51. Plaintiff realleges and incorporates herein the allegations set forth above.

52. Brideson and Downs knowingly and negligently released Ms. Castillo's return information to an unauthorized individual in violation of 26 U.S.C. § 6103.

53. As a direct and proximate result of these acts and omissions, Plaintiff has suffered damages, past, present, and future, including but not limited to statutory, actual, and punitive damages, damage to her credit rating, possible suspension of her United States Passport, suspension of her NY State driver's license, physical injury, mental anguish, humiliation, embarrassment, aggravation, and emotional distress, together with costs and attorneys' fees

incurred in obtaining relief from the Defendant's wrongful and grossly negligent acts and omissions.

## DEMAND FOR JURY TRIAL

54. Plaintiff demands a jury trial on all issues raised in this Complaint.

WHEREFORE, Plaintiff prays that this Court:

    i.    award Plaintiff the higher of statutory or actual damages;

    ii.    award Plaintiff punitive damages;

    iii.    award Plaintiff reasonable costs and attorney's fee; and

    iv.    award Plaintiff such other and further relief as the Court may deem just and proper.

Dated: January 4, 2021  
New York, NY

LINCOLN SQUARE LEGAL SERVICES, INC.

By: *Elizabeth Maresca*
_____
Elizabeth Maresca, Esq.
Fordham Law School
150 W. 62nd Street, 9th Floor
New York, NY 10023
212-636-7353
emaresca@lsls.fordham.edu
Attorneys for Plaintiff

10