UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------

JOSEFA CASTILLO,

                                        Plaintiff,

                -against-

UNITED STATES OF AMERICA,

                                        Defendant.

-------------------------------------------------------------

21cv00007 (DF)

**MEMORANDUM
AND ORDER**

**DEBRA FREEMAN, United States Magistrate Judge:**

        In this action, which is before this Court on the consent of the parties pursuant to

28 U.S.C. § 636(c), plaintiff Josefa Castillo ("Plaintiff") claims that, in violation of 26 U.S.C.

§ 6103, defendant United States of America ("Defendant") – acting through Theresa Brideson

("Brideson"), an agent of the Internal Revenue Service ("IRS"), and her supervisor,

Valerie Downs ("Downs") – disclosed Plaintiff's confidential tax return information to an

unauthorized person, causing Plaintiff financial and emotional injury.

        More specifically, as set out further below, Plaintiff contends that, after receiving notice

from the IRS of the filing of a federal tax lien against her and of her right to an IRS Collection

Due Process ("CDP") hearing, she retained an attorney named Victor J. Molina ("Molina") to

represent her and requested such a hearing.  Thereafter, however, Plaintiff repeatedly notified the

IRS, and specifically Brideson (the agent assigned to Plaintiff's CDP hearing), that she had

revoked Molina's authority, and had instead authorized her current counsel – Elizabeth Maresca

("Maresca") and law students of Lincoln Square Legal Services, Inc. ("LSLS") – to represent her

in connection with the CDP hearing.  Despite this, and contrary to IRS protocols and procedures,

LSLS was not given notice that an adverse final determination was made in that hearing.

Instead, Brideson, allegedly with the approval of Downs, erroneously sent the IRS's Final Notice

of Determination to Molina.  Plaintiff claims that, as a result of the unauthorized disclosure to Molina, she did not learn of the hearing determination in a timely manner, causing her to miss a deadline for petitioning the United States Tax Court (the "Tax Court") for review.  This, Plaintiff claims, in turn caused her to sustain injury, as she not only suffered financial losses and emotional distress in connection with collection actions that would have been suspended, had she been able to file a timely petition, but also lost the opportunity to present what she contends would have been a meritorious defense to the IRS's underlying tax assessment.  She has sued Defendant for damages under 26 U.S.C. § 7431(a)(1), which provides a private right of action for violations of Section 6103.

Currently before the Court is a motion by Defendant for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. 38.)  Defendant concedes that it is liable for having made an unauthorized disclosure, but, by its motion, it seeks entry of judgment against it in the limited amount of $1,000 in statutory damages, plus the costs of this action, arguing that Plaintiff is entitled to nothing more.  In particular, Defendant argues that any actual damages sought by Plaintiff are related to injuries that did *not* result from the unauthorized disclosure to Molina (in other words, from the violation of Section 6103), but, if anything, flowed from the IRS's failure to disclose the Notice of Determination to LSLS – a failure that, in itself, is not actionable under the statutory scheme.  In response, Plaintiff disputes Defendant's causation analysis and further argues that, even if it were found that she could not establish actual damages from the Section 6013 violation, she would still be entitled to punitive damages, in light of what she characterizes as the IRS's gross negligence – a characterization Defendant vigorously challenges on reply.

For the reasons discussed below, Defendant's motion for judgment on the pleadings is granted in part and denied in part, and judgment in Plaintiff's favor is granted on the issue of liability.

## BACKGROUND

### A.   Statutory Framework

#### 1.   Section 6103

The Internal Revenue Code provides that tax "[r]eturns and return information shall be confidential." 26 U.S.C. § 6103(a). For purposes of the statute, "return information" is broadly defined to include not just the taxpayer's personal identifying information, but also information regarding his or her tax payments and liabilities, including

> whether the taxpayer's return was, is being, or will be examined or
> subject to other investigation or processing, or any other data,
> received by, recorded by, prepared by, furnished to, or collected by
> the Secretary with respect to a return or with respect to the
> determination of the existence, or possible existence, of liability
> (or the amount thereof) of any person under this title for any tax,
> penalty, interest, fine, forfeiture, or other imposition, or offense.

26 U.S.C. § 6103(b)(2)(A). In addition, the statute explicitly provides that "return information" covers "any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b)) which is not open to public inspection under section 6110." 26 U.S.C. § 6103(b)(2)(B). Under 26 U.S.C. § 6110(b)(1)(A), the term "written determination" means, *inter alia*, "a ruling [or] determination letter."

Section 6103 further provides that "no officer or employee of the United States . . . shall disclose any return or return information obtained by him [or her], in any manner in connection with his [or her] service as such an officer or an employee or otherwise or under the provisions of this section," 26 U.S.C. § 6103(a)(1), (3), except in limited, specified circumstances, *see*

3

26 U.S.C. § 6103(c)-(o).  Disclosure is permitted under the statute to "such person or persons as the taxpayer may designate in a request for or consent to such disclosure."  26 U.S.C. § 6103(c).

      2.    **<u>Section 7431</u>**

26 U.S.C. § 7431 provides a taxpayer with a private right of action against the United States, where, in violation of Section 6103, an IRS employee makes an unauthorized disclosure of the taxpayer's "return information."  Specifically, Section 7431 states:

> If any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any . . . return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

26 U.S.C.A. § 7431(a)(1).

As for damages that may be available in such a civil action, Section 7431(c) provides that the United States, as defendant, may be held liable for "an amount equal to the sum of":

    (1)    the greater of –

        (A)    $1,000 for each act of unauthorized . . . disclosure of . . . return information with respect to which such defendant is found liable, or

        (B)    the sum of –

            (i)    the actual damages sustained by the plaintiff as a result of such unauthorized . . . disclosure, plus

            (ii)    in the case of a willful . . . disclosure or [a] . . . disclosure which is the result of gross negligence, punitive damages, plus

    (2)    the costs of the action, plus

> (3)     . . . reasonable attorneys fees, except that if
>           the defendant is the United States, reasonable
>           attorneys fees may be awarded only if the plaintiff
>           is the prevailing party (as determined under
>           section 7430(c)(4)).

26 U.S.C. § 7431(c).

Under Section 7430(c)(4), a "prevailing party" generally includes a party that has "substantially prevailed" with respect to either "the amount in controversy," 26 U.S.C. § 7430(c)(4)(A)(i)(I), or "the most significant issue or set of issues presented," 26 U.S.C. § 7430(c)(4)(A)(i)(II), although a plaintiff may not be treated as the "prevailing party" if the United States establishes that its position in the suit "was substantially justified," 26 U.S.C. § 7430(c)(4)(B)(i).

In determining whether the United States' position was substantially justified, Section 7430(c) directs that "the court shall take into account whether the United States has lost in courts of appeal for other circuits on substantially similar issues." 26 U.S.C. § 7430(c)(4)(B)(iii). This statute, however, also creates a rebuttable presumption that the United States' position was *not* substantially justified "if the [IRS] did not follow its applicable published guidance in the administrative proceeding." 26 U.S.C. § 7430(c)(4)(B)(ii). For purposes of establishing this presumption, "applicable published guidance" means "regulations, revenue rulings, revenue procedures, information releases, notices, and announcements," as well as "private letter rulings, technical advice memoranda, and determination letters" issued to the taxpayer. 26 U.S.C. § 7430(c)(4)(B)(iv).

**B.     The Party's Pleadings**

The allegations of Plaintiff's Amended Complaint (*see* First Amended Complaint, dated July 29, 2021 ("Am. Compl.") (Dkt. 36)), which are taken as true for purposes of Defendant's Rule 12(c) motion (*see* Discussion, *infra*, at Section I), may be summarized as follows:

**1.      The Tax Lien Filed Against Plaintiff,
the Related CDP Proceedings, and Plaintiff's
Notice of a Change of Authorized Representative**

Underlying the events that gave rise to this action was an assessment by the IRS – claimed by Plaintiff to have been erroneous – that Plaintiff had underpaid her federal taxes for the year 2014.  (*See* Am. Compl. ¶¶ 6, 23.)  In connection with that supposed underpayment, the IRS, in February 2018, issued a notice under 26 U.S.C. § 6320 that it was filing a tax lien against Plaintiff, and was giving her an opportunity for a CDP hearing before commencing collection actions.  (*See id*. ¶ 6.)  Plaintiff then requested a CDP hearing and hired Molina to represent her in connection with it.  (*See id*. ¶ 7.)  In September 2018, however, having become "unhappy with [] Molina's services," she revoked his authority to represent her before the IRS, and instead authorized Maresca and LSLS to represent her in his place.  (*Id*. ¶¶ 7-8.)

It is undisputed that, on or about September 25, 2018, Plaintiff duly notified the IRS, in writing, that she was revoking Molina's power of attorney ("POA") and was instead granting a POA to Maresca, of LSLS.  (*See id*. ¶ 8; *see also* Answer to First Amended Complaint, dated Aug. 13, 2021 ("Ans.") (Dkt. 37) ¶ 8.)  In its Answer, Defendant admits Plaintiff's allegations that she sent that written notification directly to Brideson, by fax; that it was received by Brideson; that it indicated that Maresca, of LSLS, would represent Plaintiff at the CDP hearing; and that it also indicated that Maresca was to receive "copies of notices and communications" related to that hearing.  (*See* Ans. ¶¶ 12, 44; *see also id*. ¶ 14 (admitting that the LSLS POA form

that was received by Brideson contained "a checked box next to the phrase 'Check if to be sent copies of notices and communications'").)

Plaintiff additionally alleges that LSLS not only communicated with Brideson in writing about representing Plaintiff, but also spoke with Brideson directly about the matter.  (*See id*. ¶¶ 15 (alleging that, "[a]t the CDP Hearing on September 26, 2018, Brideson spoke with LSLS and verbally confirmed receipt of both the revocation of the Molina POA and the filed LSLS POA"); 16 (alleging that "LSLS spoke again with Brideson" on or about October 11, 2018).) Although Defendant states that it lacks knowledge or information as to the content of Brideson's September 26 conversation with LSLS, it concedes that the conversation took place, and admits that, as of that date, "Brideson knew that Molina's POA had been revoked, and that LSLS was Plaintiff's authorized representative."  (Ans. ¶ 91.)  Defendant also admits that Brideson "had multiple contacts with LSLS."  (*Id*.)

Moreover, Plaintiff alleges that, at the same time that she sent the written notification of the change in her authorized representative to Brideson, she sent the same written notification to the IRS Central Authorization File ("CAF") Unit in Memphis, Tennessee.  (Am. Compl. ¶ 8.) According to Plaintiff, the CAF Unit processes POAs in a "centralized computer database system that contains information on authorized taxpayer representatives."  (*Id*. ¶ 9.)  Plaintiff alleges that the CAF Unit proceeded to "enter[] the Molina revocation and the LSLS POA into the IRS's Integrated Data Retrieval System ('IDRS')," such that, by at least October 4, 2018, the system duly reflected the change in Plaintiff's authorized representative.  (*Id*. ¶ 10 (alleging that "IDRS reflects that the Molina POA was revoked on October 3, 2018 and the LSLS POA was entered on October 4, 2018").)  Indeed, Plaintiff alleges, and Defendant does not dispute, that, "[o]n October 12, 2018, the CAF Unit sent a letter to [Plaintiff] notifying her that they received her

revocation of the Molina POA and that it was cancelled as of October 2, 2018." (*Id*. ¶ 17; *see* Ans. ¶ 17.)

### 2.    The IRS's Unauthorized Disclosure to Molina of its Notice of Determination

The Amended Complaint suggests that LSLS was unable to reach Brideson after their conversation on October 11, 2018.  (*See* Am. Compl. ¶¶ 18-19 (alleging that Brideson did not respond to letters from LSLS sent on October 19 and November 13, 2018).)  Plaintiff additionally alleges – and Defendant concedes – that, during a period from December 22, 2018 to January 25, 2019, the IRS was shut down due to a lapse in congressional appropriations, and that Brideson was furloughed during that time, as was her supervisor, Downs.  (*See id*. ¶ 20; Ans. ¶ 20.)  Plaintiff further alleges that, in March and April of 2019, after the shutdown, LSLS tried again, in vain, to reach Brideson, leaving voicemail messages that were not returned.  (*See* Am. Compl. ¶ 21.)

After several months of having had no success in contacting Brideson, Plaintiff alleges that, "[o]n September 18, 2019, LSLS ordered and reviewed [Plaintiff's] IRS transcript and learned from it for the first time that the IRS had acted in the CDP Hearing" (*id*. ¶ 22) – in other words, that a determination had been made.  Within 30 days of learning this, LSLS filed a Petition on Plaintiff's behalf in the Tax Court, challenging the IRS collection actions and the underlying tax assessment.  (*Id*. ¶ 23.)  The IRS then filed an Answer to that Petition, attaching to its Answer a copy of the final Notice of Determination that had been issued in connection with the CDP hearing.  (*Id*. ¶ 24.)  That Notice was dated December 11, 2018 (*id.*), and, as Plaintiff had not filed her Petition in the Tax Court within 30 days of the date of the Determination, as required by 26 U.S.C. § 6330(d)(1), the IRS moved to dismiss Plaintiff's Petition as untimely

(*see id*. ¶¶ 66-67).  The Tax Court granted that motion, apparently finding that, because of the

statutory time-bar, the court lacked jurisdiction to consider the Petition.  (*See id*. ¶ 67.)

The Notice of Determination attached to the IRS's Answer – which contained Plaintiff's

"confidential return information, including her name, social security number, new home address,

the IRS determination in her CDP case and, most notably, the date of the Notice" (*id*. ¶ 65; *see*

*also* Ans. ¶ 65 (admitting that the Notice contained this information)) – showed, on its face, that

the IRS had sent a copy of it to Molina, rather than to LSLS (*id*. ¶ 24; Ans. ¶ 24).  Plaintiff

alleges that, if Molina in fact received the Notice of Determination, he notified neither her, nor

LSLS, that it had been received.  (*Id*. ¶ 25.)  Plaintiff also alleges that, although the IRS claims to

have sent a copy of the Notice directly to her on December 11, 2018, that copy was never

delivered to her (*id*. ¶¶ 55, 57), but rather, over two years later (*i.e.*, as of January 2021), "it was

still listed as 'in transit' in the postal service tracking system" (*id.* ¶ 55).  It appears from

Plaintiff's allegations that the first time either she or her authorized representative ever saw a

copy of the Notice of Determination was when they received the IRS's Answer to her Tax Court

Petition.  (*See id*. ¶ 62.)

Defendant admits that the Notice of Determination was sent to Molina (*see* Ans. ¶ 94),

and that this was an "unauthorized disclosure" within the meaning of 26 U.S.C. § 6103 (*see id*.

¶¶ 89, 95, 96, 98, 101.)  As for how the Notice came to be sent to Molina despite Plaintiff's

revocation of the Molina POA, Plaintiff alleges multiple failures within the IRS, but largely

places the blame on Brideson and Downs for negligently failing to follow not only the law, but

also established IRS procedures designed to prevent such errors.  (*See generally* Am. Compl.

¶ 96 (alleging that Brideson and Downs "acted with negligence, gross negligence, and extreme

disregard for the law, regulations, the [Internal Revenue Manual ("IRM")], and IRS guidelines and protocols").)

With respect to IRS protocols, Plaintiff alleges that, at the conclusion of a CDP hearing, an appeals officer is supposed to prepare closing documentation to transmit to the taxpayer's authorized representative.  (*See id.* ¶ 31.)  According to Plaintiff, that documentation includes, *inter alia*, an IRS Form 5402, a notice of determination, and a cover letter to the taxpayer's representative.  (*Id.*)  IRS Form 5402 contains a field for the identity of the taxpayer's authorized representative, and Plaintiff alleges that this field is "prepopulate[d]" by information found in an Appeals Centralized Database System ("ACDS"), which appeals employees are required to keep up to date.  (*See id.* ¶¶ 27-28, 31, 34.)  More specifically, Plaintiff alleges that the IRM, which "provides procedures, instructions, and guidelines that all IRS employees are required to follow" (*id.* ¶ 26), "requires that the IRS Appeals Officer validate the authorized representative information on ACDS when preparing the closing documentation, . . . as the authorized representative information is a 'critical data field'" (*id.* ¶ 46).  Further, Plaintiff alleges that, on Form 5402, the field for the name of the taxpayer's authorized representative "is highlighted in yellow to assure that Appeals employees check the entry for accuracy."  (*Id.* ¶ 34.)

In Plaintiff's case, the IRS Appeals Officer who was assigned to the CDP hearing was Brideson.  (*Id.* ¶ 8(a).)  Not only does Plaintiff allege (and Defendant admit) that Brideson had *actual knowledge* that LSLS (and not Molina) was Plaintiff's authorized representative (*see id.* ¶¶ 8, 12-14, 44-45), but Plaintiff also alleges that it was Brideson's responsibility, per the IRM, to validate the authorized representative information contained on ACDS, in preparing the closing documents from the CDP hearing (*see id.* ¶ 46).  In preparing the closing documentation, however, including the Form 5402, the Notice of Determination, and the cover letter to

Plaintiff's representative, Brideson incorrectly identified Molina as Plaintiff's authorized representative.  (*See id*. ¶¶ 47, 49, 51; *see also* Ans. ¶¶ 47, 49, 51 (admitting these allegations).)  Brideson allegedly did this despite the fact that, on or about the same date as she was preparing those documents, she printed out her "Case Activity Report," which, Plaintiff asserts, "repeatedly indicated that LSLS was [Plaintiff's] authorized representative."  (*Id*. ¶ 48.)

Plaintiff also alleges that, after preparing the closing documentation following a CDP hearing, the appeals officer is supposed to send that material to the Appeals Team Manager ("ATM") for approval.  (*Id*. ¶ 36.)  According to Plaintiff, the IRM requires the ATM, like the appeals officer, "to ensure that all correspondence is sent to the appropriate persons including the correct POA."  (*Id*. ¶ 38.)  Plaintiff further references the IRS's own training materials, and alleges that, as a general matter, those materials suggest that the ATM assigned to a case is required "to conduct an appropriate analysis of case activity," and "to maintain direct knowledge of the case[]."  (*Id*. ¶¶ 52-53.)

In this instance, Plaintiff alleges that the ATM directly overseeing Brideson's work was Downs.  (*See id*. ¶¶ 20, 49.)  Plaintiff alleges that, despite the fact that Plaintiff's case file "contained numerous references to LSLS, numerous copies of the LSLS POA, [and] the revocation of the Molina POA, and [the fact that] IDRS indicated that LSLS was [Plaintiff's] authorized representative at all times after October 4, 2018" (*id.* ¶ 53), Downs signed the inaccurate Form 5402 "underneath the 'Taxpayer Representative' box that incorrectly listed [] Molina" (*id*. ¶ 50; *see also* Ans. ¶ 50 (admitting that Downs did this)).  Downs allegedly also approved the cover letter addressed to Molina that stated:  "We are sending you the enclosed material under the provisions of your power of attorney or other authorization we have on file." (*Id.* ¶ 51 (internal quotation marks omitted).)

Finally, Plaintiff alleges that, "[a]fter the ATM reviews and approves the closing documentation, the case file and closing documents are sent to Account and Processing Support ("APS") for mailing," and she alleges that, at this "last processing point in the Appeals Office," "APS is responsible for checking IDRS." (*Id*. ¶ 39.) As noted above, Plaintiff alleges that information from the CAF Unit, including the taxpayer's POA information, is contained in IDRS. (*See id*. ¶¶ 10, 40.) She alleges that, based on IRS training materials, APS employees are required to use technologies, such as IDRS, "to ensure accuracy during the closing process" (*id*. ¶ 41). Plaintiff also alleges that appeals employees are supposed to complete a form that reflects the mailing of a notice of determination, but that the administrative file in this case does not contain any such form. (*See id*. ¶ 42.)

According to Plaintiff, "[i]f the IRS had followed its own procedures – including but not limited to its obligations to keep taxpayer data current and to issue notices to the proper authorized representative – the representative's copy of the Notice of Determination would have been sent to LSLS, not [] Molina." (*Id*. ¶ 56.) Defendant does not admit this allegation as pleaded, but at least concedes that, "had [it] issued the Notice of Determination to the proper authorized representative, the representatives copy of the Notice . . . would have been sent to LSLS and not [] Molina." (Ans. ¶ 56.)

### 3.   Plaintiff's Claimed Injuries From the Unauthorized Disclosure

In her Amended Complaint, Plaintiff alleges that she suffered various injuries from Defendant's unauthorized disclosure, for which she is entitled to recover actual damages.

First, she alleges that "[t]he IRS's error in sending a copy of the Notice of Determination to [] Molina instead of to LSLS effectively deprived [her] of judicial review of the IRS['s] [allegedly] erroneous tax assessment." (Am. Compl. ¶ 78.) On this point, Plaintiff asserts that,

because the IRS sent the Notice of Determination to Molina instead of to LSLS, she did not

receive it in time to file a Petition in Tax Court within the statutory limitations period.  (*See id*.

¶¶ 59-60, 66-67.)  She further contends that, had she been able to make a timely challenge of the

tax assessment in the Tax Court, she would have prevailed based on records showing that she did

not actually owe the tax in question, and because, in light of those records, the IRS would not

have been able to meet its burden of proof.  (*See id*. ¶¶ 69-72.)  Although Plaintiff does not

specify the exact amount of the tax assessment (or interest and penalties), she does generally

allege that she has been left "with a tax debt exceeding $80,000, which she does not owe and

cannot pay."  (*Id*. ¶ 1.)

Second, Plaintiff asserts, in her Amended Complaint, that, under 26 U.S.C. § 6330(e), a

timely filed Petition in Tax Court will suspend IRS collection activity.  (*Id*. ¶ 74.)  As she was

unable to file a timely Petition, the IRS allegedly instituted collection actions, levying her bank

accounts, and notifying her that the U.S. State Department would be "prohibited from issuing or

renewing her United States Passport due to her delinquent federal tax debt."  (*Id*. ¶ 75; *see also*

Ans. ¶ 75 (admitting these allegations).)  She also alleges that, based on information provided to

it by the IRS, the New York State Department of Taxation also made a tax assessment, which

resulted in the revocation of her driver's license.  (*Id.* ¶ 76.)

Third, Plaintiff claims that she has become "emotionally and physically consumed by the

effects of the IRS's error," suffering from stress that has affected her eating habits, her ability to

sleep, her blood pressure, and her overall mental health.  (*See id*. ¶¶ 79-88.)

### C.   <u>Procedural History</u>

On January 4, 2021, Plaintiff, represented by Maresca of LSLS, commenced a civil

action in this Court under 26 U.S.C. § 7431, claiming a violation by Defendant of 26 U.S.C.

§ 6103.  (*See* Complaint, dated Jan. 4, 2021 (Dkt. 1) (refiled at Dkt. 7).)  Plaintiff then filed an

Amended Complaint on July 29, 2021 (Am. Compl. (Dkt. 36)), and Defendant filed its Answer

to that amended pleading on August 13, 2021 (Ans. (Dkt. 37)).

On August 28, 2021, Defendant filed its motion for judgment on the pleadings (*see*

Notice of Motion (Dkt. 38), accompanied by a memorandum of law (Memorandum of Law in

Support of Defendant's Motion For Judgment on the Pleadings, dated Aug. 28, 2021 ("Def.

Mem.") (Dkt. 39)).  Plaintiff filed an opposition memorandum on October 21, 2021 (Plaintiff's

Memorandum of Law in Opposition to Defendant's Motion For Judgment on the Pleadings,

dated Oct. 21, 2021 ("Pl. Mem.") (Dkt. 40)), and Defendant filed a reply memorandum on

November 10, 2021 (Reply Memorandum of Law in Support of Defendant's Motion For

Judgment on the Pleadings, dated Nov. 10, 2021 ("Def. Reply Mem.") (Dkt. 45)).[1]

In its motion, Defendant notes that, in its Answer, it conceded that it had violated

Section 6103 by disclosing Plaintiff's "tax return information" (specifically, the Notice of

Determination) to Molina.  (Def. Mem., at 1.)  Defendant contends, however, that, because

Plaintiff has not alleged that Molina ever "did anything with Plaintiff's tax information that

harmed her," she has failed to allege that she "suffered actual damages resulting from the

unauthorized disclosure."  (*Id.*)  Essentially, Defendant takes the position that Section 6103 was

designed to provide taxpayers with "privacy protections," and that the statutory scheme thus

allows for an award of actual damages only where a taxpayer has suffered an injury flowing from

a privacy violation.  (*See id.*, at 18.)  Here, according to Defendant, Plaintiff's Complaint does

not allege that her claimed injuries resulted from (*i.e.*, that they were actually and proximately

---

[1] On November 12, 2021, this case was referred to this Court for all purposes, on consent
of the parties, pursuant to 28 U.S.C. § 636(c).  (Dkt. 47.)

14

caused by) the unauthorized disclosure to Molina; rather, Defendant characterizes Plaintiff's allegations as asserting only that she suffered injuries as the result of the IRS's *failure to make an authorized disclose* to LSLS – a failure that, Defendant argues, is not actionable under Sections 6103 and 7431.  (*See generally id.*, at 15-19.)  Defendant further argues that, absent any entitlement to actual damages, Plaintiff's recovery in this action must be limited to $1,000 in statutory damages under Section 7431, plus costs, but exclusive of attorneys' fees because Defendant's position in this case was "substantially justified."  (*See id.*, at 18-20.)

      In her opposition, Plaintiff disagrees with Defendant's analysis as to the cause of her claimed injuries, asserting that her Amended Complaint "pleads sufficient factual matter, when accepted as true, that [the] unauthorized disclosure was the actual and proximate cause of the [actual] damages [she] suffered."  (Pl. Mem., at 1.)  On this point, Plaintiff argues that the "lack of receipt" by LSLS was *itself* "the result of the unauthorized disclosure," as, "[l]ogically, when one sends the Notice to the wrong person, the correct person will not receive it."  (*Id.*, at 6; *see generally id.*, at 6-17.)  Plaintiff further argues that the IRS's unauthorized disclosure was the result of gross negligence, entitling her to punitive damages, regardless of whether she may recover actual damages.  (*See id.*, at 17-22.)  Finally, Plaintiff contends that she is entitled to attorneys' fees as the prevailing party in this suit, as Defendant "has conceded the most significant issue presented by admitting to a violation of Section 6103," and as the positions Defendant has taken in this action have not been "substantially justified."  (*Id.*, at 22-23.)

      On reply, Defendant principally responds to Plaintiff's arguments regarding punitive damages, arguing that Section 7431 should be read to allow for punitive damages only in cases where actual damages are established as a predicate, and that, in any event, the conduct alleged

by Plaintiff cannot be characterized as sufficiently egregious to meet the applicable standard for

"gross negligence." (*See generally* Def. Reply Mem.)

## DISCUSSION

### I.     RULE 12(c) STANDARDS

"After the pleadings are closed – but early enough not to delay trial – a party may move

for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Pleadings" include both the "complaint"

and the "answer to [the] complaint." Fed. R. Civ. P. 7(a).

Judgment on the pleadings under Rule 12(c) is appropriate where "the movant establishes

'that no material issue of fact remains to be resolved,'" *Guzman v. Astrue*, No. 09cv3928 (PKC),

2011 WL 666194, at *6 (S.D.N.Y. Feb. 4, 2011) (quoting *Juster Assocs. v. City of Rutland*,

901 F.2d 266, 269 (2d Cir. 1990)), and a judgment on the merits can be made "'merely by

considering the contents of the pleadings,'" *id*. (quoting *Sellers v. M.C. Floor Crafters, Inc.*,

842 F.2d 639, 642 (2d Cir. 1988)). Unlike the standards applicable to a summary judgment

motion made under Rule 56, however, where the question of whether a material dispute exists is

generally based on a developed evidentiary record, a motion for judgment on the pleadings turns

on the question of whether the plaintiff's *allegations* are capable of raising a triable issue. *Lively

v. WAFRA Inv. Advisory Grp., Inc.*, 6 F. 4th 293, 301 (2d Cir. 2021). Thus, when a court decides

a Rule 12(c) motion, it should "apply the same standard as that applicable to a motion under Rule

12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable

inferences in favor of the nonmoving party." *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.

1999); *Lively*, 6 F. 4th at 301 (explaining that, on a Rule 12(c) motion, "[u]ntil both parties have

an opportunity to test their evidence at summary judgment or trial, [the court] must accept the

non-movant's pleading as true and decline to weigh competing allegations asserted by the

moving party"). "To survive a Rule 12(c) motion, [the plaintiff's] 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (internal quotation marks omitted)).

## II.   DEFENDANT'S MOTION

### A.    Defendant Has Conceded a Violation of Section 6103.

Defendant is quite clear in its papers that it has conceded liability for a violation of Section 6103, taking the underlying issue of whether it, in fact, made an "unauthorized disclosure" of "tax return information" out of the case.  (*See* Def. Mem., at 1; *see also* Ans. ¶¶ 89, 95, 96, 98, 101.)  Thus, at a minimum, Plaintiff is entitled to judgment in her favor on liability, leaving open only the question of her entitlement to actual and/or punitive damages and attorneys' fees.

### B.    Even Taken as True, the Facts Pleaded by Plaintiff Cannot Support a Claim of Actual Damages Resulting From the Violation.

While the allegations of the Amended Complaint, taken as true, are more than sufficient to give rise to an inference that Plaintiff sustained actual damages from not being informed of the Notice of Determination in a timely fashion, that is not the question before the Court.  Rather, on the issue of actual damages, the question under Section 7431(c)(1)(B)(i) is whether Plaintiff's allegations are sufficient to plead that she sustained such damages "as a result of [the] unauthorized . . . disclosure" of that Notice to Molina.  On that knottier question, the Court finds that Defendant has argued convincingly that Plaintiff's allegations, even read to afford her every favorable inference, are not adequate to plead the requisite causation.

1.      <u>The Proximate Cause Standard for Actual Damages Under § 7431(c)</u>

In its motion, Defendant relies on cases from other districts for the proposition that, for a plaintiff to prevail on a claim for actual damages under Section 7431(c)(1)(B)(i), the plaintiff must not only demonstrate that the harm he or she suffered was "in fact" caused by the Section 6103 violation, but also that the violation was the "proximate cause" of the injury.  (*See* Def. Mem., at 10-11 (citing, *inter alia*, *Nat'l Org. for Marriage, Inc. v. United States*, 24 F. Supp. 3d 518, 529 (E.D. Va. 2014)); *Fattah v. United States*, No. 14 Civ. 1092, 2017 WL 3638076, at *2 (E.D. Pa. July 27, 2017).)  Plaintiff does not dispute that proposition, and, indeed, relies on the same cases in framing her own argument regarding her alleged entitlement to actual damages.  (*See* Pl. Mem., at 6 n.29.)  The Court finds the cases cited by the parties persuasive as to the causation standard applicable to Section 7431(c), and consistent with the limited body of case law on the issue.  *See Nat'l Org. for Marriage*, 24 F. Supp. 3d at 529 (noting that, while "[t]he case law is admittedly sparse regarding what is necessary to establish actual damages under § 7431(c)[,] [e]ach court to have addressed this issue [] has uniformly concluded that that the common law elements of causation – actual and proximate cause – must be proven").

As stated in *Nat'l Org. for Marriage*, "[a]ctual cause, or cause in fact, requires 'pro[of] that the wrongful act in fact caused the harm; that is, the plaintiff must prove that "but for" the wrongful act, the harm would not have occurred.'"  24 F. Supp. 3d at 529 (quoting *Jones v. United States*, 9 F. Supp. 2d 1119, 1138 (D. Neb. 1998) (brackets in original)).  Once "cause in fact" is established, "proximate cause" then acts as a narrowing principle to ensure that the plaintiff's recovery is limited to damages for harm that had a reasonably direct relation to the defendant's challenged conduct.  As the Supreme Court has explained:  "Every event has many causes, [] and only some of them are proximate, as the law uses that term.  So to say that one

event was a proximate cause of another means that it was not just any cause, but one with a sufficient connection to the result." *Paroline v. United States,* 572 U.S. 434, 444 (2014) (quoted in *Nat'l Org. for Marriage*, 24 F. Supp. 3d at 529). "A requirement of proximate cause thus serves, *inter alia,* to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity." *Id*. at 445.

### 2. Plaintiff's Allegations Do Not Give Rise To a Plausible Inference That the Unauthorized Disclosure Was the <u>Cause in Fact of Her Injuries, Much Less the Proximate Cause.</u>

In arguing that she has sufficiently pleaded both cause in fact and proximate cause, Plaintiff asserts that the Amended Complaint lays out the "path" that led from the IRS's unauthorized disclosure to her claimed actual damages. (Pl. Mem., at 6.) Plaintiff asserts the "first step" of this path – which she claims Defendant has conceded – "is that but for the IRS's unauthorized disclosure, the IRS would have sent the representative's copy of the Notice [of Determination] to LSLS." (*Id*., at 7.) In other words, Plaintiff contends that, "but for" the unauthorized disclosure, LSLS would have received the Notice, and that LSLS would have then taken the next step of filing a timely Petition with the Tax Court, which, in turn, would have resulted in a freeze of the IRS's collection actions against Plaintiff, and, ultimately a favorable ruling from the Tax Court on the underlying tax assessment. (*See id*.)

In a separate attempt to trace a direct line of causation from the unauthorized disclosure to her claimed injuries, Plaintiff also contends that Defendant's focus on the fact that Molina "did not do anything" with the unauthorized disclosure is misplaced. (*Id.*) According to Plaintiff, "receipt of a Notice [of Determination] requires action: filing a petition, or at least notifying the taxpayer that the Notice had been issued." (*Id.*) Plaintiff thus seems to contend that Molina's "inaction" could itself be viewed as a step in the chain of events that led her to

forfeit her opportunity to halt the collection activity against her and to obtain a tax ruling in her favor.  (*See id*., at 7-8 (arguing that Defendant "caused the harm because it disclosed the information to a person who failed to act and who could not take action because he was not [Plaintiff's] representative").)

Closely scrutinized, neither of these efforts by Plaintiff to explain how the unauthorized disclosure was the cause of her injuries is supported by reason or logic.

First, Defendant has *not* conceded that, "but for the IRS's unauthorized disclosure, the IRS would have sent the representative's copy of the Notice to LSLS."  (Pl. Mem., at 7 nn.32, 33 (citing Am. Compl. ¶ 56; Ans. ¶ 56).)  Instead, what the pleadings actually show on this point is the following:  In the cited paragraph of the Amended Complaint, Plaintiff alleged, "If the IRS followed its own procedures – including but not limited to its obligations to keep taxpayer data current and to issue notices to the proper authorized representative – the representative's copy of the Notice of Determination would have been sent to LSLS, not to [] Molina."  (Am. Compl. ¶ 56.)  In its Answer, Defendant denied this allegation, except for admitting that "had Defendant issued the Notice of Determination to the proper authorized representative, the representatives copy of the Notice of Determination would have been sent to LSLS and not to [] Molina."  (Ans. ¶ 56.)  Thus, all Defendant effectively conceded was that LSLS (and not Molina) was Plaintiff's authorized representative, leading to the rather uncontroversial admission that, had Defendant sent the Notice to the authorized representative, it would have sent it to LSLS.  Further, even taking Plaintiff's allegation as true for purposes of Defendant's motion, all that she has effectively alleged in the referenced paragraph is that the IRS's *failure to follow its procedures* resulted in the Notice's being sent to Molina, rather than to LSLS.  That is not the same thing as

alleging that, but for the IRS's having made an unauthorized disclosure of tax return information to Molina, it would have necessarily made an authorized disclosure to LSLS.

The real problem here is that, at its core, what the Amended Complaint alleges is that Brideson and/or Downs neglected to follow IRS procedures and protocols, and, in so doing, made an improper decision as to where to send the Notice of Determination.  That decision (which, for this analysis, the Court will label "Event A") essentially led to two separate events: (1) the unauthorized disclosure of the Notice to Molina (which the Court will label "Event $B_1$"), and (2) the failure to make an authorized disclosure of the Notice to LSLS (which the Court will label "Event $B_2$").  Events $B_1$ and $B_2$ were arguably two sides of the same coin, resulting simultaneously from the same improper decision.  For purposes of Section 7431(c), though, the first level of the proximate-cause inquiry asks what was caused in fact by *Event $B_1$* (the unauthorized disclosure that constituted the Section 6103 violation), not what was caused in fact by Event A.  The Court simply cannot draw the inference from Plaintiff's allegations, even taken as true, that Event $B_1$ was itself a "but for" cause of Event $B_2$.  In short, although the IRS's unauthorized disclosure to Molina and its failure to make an authorized disclosure to LSLS both plausibly had the same root cause in the IRS's failure to follow its own protocols, one cannot be said to have caused the other.

Further, unless Plaintiff can somehow get to Event $B_2$ (the non-disclosure to LSLS) as an event caused by the Section 6103 violation, she cannot get to her claimed actual damages.  Fairly read, and with all inferences drawn in Plaintiff's favor, the Amended Complaint alleges that all of Plaintiff's claimed damages flowed from the failure of the IRS to give LSLS timely notice of the issuance of the Notice of Determination; essentially, Plaintiff pleads that *had LSLS received timely notice*, LSLS would have proceeded to file a timely Petition on her behalf in the Tax

Court, which, Plaintiff alleges, would have prevented the injuries that she otherwise suffered. (*See, e.g.*, Am. Compl. ¶ 78 (alleging that "[t]he IRS's error in sending a copy of the Notice of Determination to [] Molina *instead of to LSLS* effectively deprived [Plaintiff] of judicial review of the IRS's erroneous tax assessment and allowed the IRS to reinstate collection actions" (emphasis added).)  It is not enough for Plaintiff to proceed only down the path that starts with Event B₁ (the unauthorized disclosure) and allege that the disclosure to Molina resulted in his "inaction."  For one thing, it is not plausible that the disclosure to Molina "caused" Molina to take no action.  It is even less plausible that, "but for" the unauthorized disclosure, Molina would have notified Plaintiff or LSLS of the Notice of Determination; indeed, that would be nonsensical.

Finally, the Court notes that Defendant's discussion of Section 6103 as a privacy-protection statute makes intuitive sense, as does its argument that actual damages, in this context, may generally be understood to flow from the type of privacy violation that the statute is directed towards preventing.  On its face, Section 6103 prohibits the disclosure of information in which a taxpayer could have a privacy interest.  As noted by the Fifth Circuit in *Barrett v. U.S.*, 100 F.3d 35 (5th Cir. 1996), it is not even the *mailing* of protected information to an unauthorized person that constitutes a violation of Section 6103 – it is the unauthorized *disclosure* of information in that mailing that is unlawful under the statute.  *Barrett*, 100 F.3d at 39.

Although *Barrett* did not involve the adequacy of a pleading – and, indeed, the case progressed through several phases of litigation, including two appeals – Defendant nonetheless discusses the case at length in its motion (*see* Def. Mem., at 11-13), and this Court agrees that the Fifth Circuit's reasoning on the issue of actual damages is instructive.  In *Barrett*, the plaintiff was a doctor who was under criminal investigation by the IRS for having potentially failed to

report cash payments received from his patients.  *See id*. at 36-37.  In the course of that

investigation, an IRS agent sent a "circular letter" to the plaintiff's patients, disclosing, *inter alia*,

that the plaintiff was being investigated and asking for information about their payments to him.

*Id.* at 37.  The plaintiff claimed that the IRS's sending of this letter caused him to lose business.

*See id*. at 39.  The circuit court upheld the district court's ruling that the IRS had violated

Section 6103 "not by mailing the circular letters," but rather by "disclosing in the body of those

letters the criminal investigation."  *Id*. at 39.  Further, extending on this logic, the circuit

approved of the district court's reasoning that the distinction was "significant," as, if the

violation were characterized as the "mailing" of the letters, then the plaintiff could seek actual

damages based on a loss of business occasioned by his patients' concern that their own rights to

privacy had been breached, whereas, if the violation were characterized as the unauthorized

"disclosure," then the plaintiff would have to demonstrate that any lost business he suffered was

because, in light of the disclosure, his patients "thought him a 'tax cheat.'"  *Id*.  Although the

plaintiff introduced evidence before the district court to show that he had "suffered a dramatic

loss in business," that court ultimately concluded that he was unable to prove actual damages

because there was "little but speculation connecting this loss *to the unlawful disclosures*," and

the circuit court affirmed.  *Id*. at 40 (emphasis added).

      Also instructive are the other cases, cited by the parties, that have involved violations of

Section 6103.  For example, in *Nat'l Org. for Marriage* (cited in Def. Mem., at 10; Pl. Mem., at

6 n.29), the IRS violated Section 6103 by improperly disclosing a schedule (Schedule B to

Form 990) filed by the plaintiff (a tax-exempt organization) that listed the plaintiff's donors.  *See*

*Nat'l Org. for Marriage*, 24 F. Supp. 3d at 520-21.  As actual damages for the unauthorized

disclosure, the plaintiff sought, *inter alia*, the attorneys' fees it "expended during its efforts to

determine the source of the disclosure and prevent further dissemination of its Schedule B." *Id*. at 528.  On the evidentiary record that was presented in the context of a summary-judgment motion, *see id*. at 520, the court stated that it had "little trouble concluding that the unlawful disclosure of [the plaintiff's] Schedule B was the actual cause of its claimed damages," given that "it [was] clear beyond question that the disclosure gained significant media coverage that resulted in [the plaintiff's] retaining counsel to investigate the leak," *id*. at 529.  Similarly, in *Jones*, which was relied upon by the court in *Nat'l Org. for Marriage*, the district court found, after trial, that the plaintiff company and its owners had established actual damages resulting from an IRS agent's unauthorized disclosure, to a confidential informant, of information regarding the anticipated execution of a search warrant at the company's place of business, where "it [was] clear beyond question that [the company] failed as a direct result of the unlawful disclosure; that is, the disclosure caused a tip to the news media that in turn resulted in intense news coverage that destroyed [the company]." *Jones*, 9 F. Supp. 2d at 1137.

In this case, Plaintiff has not alleged that she suffered any injury at all from the wrongful disclosure of her personal or tax-related information.  She has not alleged, for example, that any personal identifying information was disseminated online, where it fell into the hands of anyone who then engaged in identity theft; she has not alleged that her confidential tax return information was disclosed to the press, which then disseminated it in an manner that caused her reputational or other harm; and she has not alleged that her confidential information was disclosed to any entities or individuals with whom she had any direct dealings, such as any employers, lenders, customers, or clients, who in any way used that information against her or withdrew their business from her.  Rather, she has alleged only that her tax return information was disclosed to Molina, who is not alleged to have used any wrongfully disclosed information

to Plaintiff's detriment, or, indeed, to have used it at all.  Thus, Plaintiff's allegations offer no basis for which it can be inferred that she sustained damages, of any kind, that were linked to the IRS's breach of her privacy.  Instead, in the absence of a statutory right to sue for the IRS's failure to disclose the Notice of Determination to her authorized representatives, Plaintiff seems to be trying to force a square peg into a round hole, by arguing that she can use Sections 6103 and 7431(c) to the same end.

For all of these reasons, the Court is constrained to agree with Defendant that, despite the unfortunate consequences of its conceded failure to send the Notice of Determination to Plaintiff's authorized representative, Plaintiff has not adequately pleaded that those consequences were caused in fact by the IRS's *disclosure* of the Notice to an unauthorized representative.  As Plaintiff has not adequately pleaded, and seemingly cannot plead, that her claimed actual damages were "caused in fact" by the IRS's unauthorized disclosure of the Notice of Determination to Molina (*i.e.*, by the Section 6103 violation), the Court need not reach the narrower question of whether her damages were proximately caused by that disclosure.  The Court finds that, under Rule 12(c), Defendant is entitled to judgment in its favor on Plaintiff's claim for actual damages.

C.    **Defendant Is Not Entitled To Judgment on the Pleadings on Plaintiff's Claim For Punitive Damages.**

As summarized above, Plaintiff argues, in her opposition to Defendant's motion, that even if she cannot establish actual damages on the facts as alleged, she could still be entitled to punitive damages under Section 7431(c)(1)(B)(ii).  (*See generally* Pl. Mem., at 16-22.) According to Plaintiff, her pleaded allegations plausibly lay out that the IRS's error in making the unauthorized disclosure to Molina "was not caused by simple negligence, but rather was the result of a litany of acts, omissions, and failures by the IRS in reckless disregard of IRS

procedure, laws, regulations[,] and [Plaintiff's] rights." (*Id.*, at 16.)  In response, Defendant

makes two arguments – first, that, under Section 7431(c), punitive damages are only available

where a plaintiff can prove actual damages (*see* Def. Reply Mem., at 4-6), and, second, that

Plaintiff's allegations are insufficient to suggest the type of recklessness necessary to satisfy the

"gross negligence" standard (*see id.*, at 6-10).  The Court disagrees with Defendant's

construction of Section 7431(c), and further finds that, at this stage, Plaintiff has plausibly

pleaded that the IRS acted with gross negligence, such that Defendant is not entitled to judgment

on the pleadings on Plaintiff's claim for punitive damages.

### 1.  Under Section 7431(c), a Plaintiff's Inability To Establish Actual Damages Does Not Bar an Award of Punitive Damages.

As set out above, Section 7431(c)(1) provides that, where a plaintiff demonstrates a

violation of Section 6103, the plaintiff may recover "the greater of" (A) $1,000 in statutory

damages, or (B) "the sum of" (i) actual damages "plus" (ii) where the unauthorized disclosure

was made willfully or by gross negligence, punitive damages.  26 U.S.C. § 7431(c)(1)(B).

Plaintiff contends that this language "clearly provides that in the event of a disclosure which is

the result of gross negligence, punitive damages are available in the absence of actual damages

so long as they exceed $1,000."  (Pl. Mem., at 22 (citing *Mallas v. United States*, 993 F.2d 1111,

1126 (4th Cir. 1993).)  In *Mallas*, the Fourth Circuit adopted this reading of the statute, rejecting

the Government's argument to the contrary.  *See Mallas*, 993 F.2d at 1126 (finding that, under

Section 7431(c), "a taxpayer may recover punitive damages [under subsection (1)(B)(ii)], even

where his actual damages are zero [under subsection (1)(B)(i)], provided those damages

[together] exceed the amount of the subsection (1)(A) [statutory] damages"); *see also Ward v.*

*United States*, 973 F. Supp. 996, 1004 (D. Colo. 1997) (noting, in *dicta*, that the analysis in

*Mallas* analysis was persuasive).

Defendant, however, relies on contrary authority (*see* Def. Reply Mem., at 3-4), including *Siddiqui v. United States*, 359 F.3d 1200 (9th Cir. 2004), in which the Ninth Circuit held that that the statute's use of the word "plus" – *i.e.*, in providing, in subsection (1)(B), that a plaintiff could be entitled to actual damages "plus" punitive damages – introduced ambiguity as to whether punitive damages could be awarded in the absence of actual damages, *see id*. at 1204.   Noting that any award of damages under Section 7431 was only allowed "pursuant to an express waiver of the Government's sovereign immunity," the court found that it was necessary to resolve the ambiguity in the Government's favor.  *Id*. (reasoning that, "[u]nder longstanding principle, 'the Government's consent to be sued must be construed strictly in favor of the sovereign and not be enlarge[d] . . . beyond what language requires'" (quoting *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34 (1992)).  Thus, the court determined that, absent actual damages, punitive damages could not be available under Section 7431(c).  *Id*.; *see also Fattah v. United States*, No. 14-1092, 2017 WL 2152171, at *9 (E.D. Pa. May 17, 2017) (relying on *Siddiqui*, and stating that "[t]he statute provides for actual damages 'plus' punitive damages, suggesting that an award of punitive damages is in addition to actual damages"); *cf. Barrett v. United States*, 917 F. Supp. 493, 504 (S.D. Tex. 1995) (reaching the same conclusion that the statute did not allow for punitive damages without actual damages, but reasoning (differently than *Siddiqui*) that "the coupling of actual and punitive damages under subpart (1)(B) and failure of the statutory damages subpart, (1)(A), to mention punitive damages, would, logically, mean that punitive damages are recoverable only when actual damages have been proved").

There is thus a judicial split on the question of whether a plaintiff may recover punitive damages under Section 7431(c)(1)(B) in the absence of actual damages, and the Second Circuit has not resolved the issue.  *See Minda v. United States*, 851 F.3d 231, 237 n.2 (2017) (noting

that, as the underlying evidentiary record did not support a finding of gross negligence in that case, the court would "not reach the government's argument that, under § 7431(c)(1)(B)(ii), a taxpayer may not recover punitive damages unless he sustained actual damages").  Under the circumstances, the Court has carefully reviewed the language of the statute itself, as well as the authority cited by the parties, and it concludes that, while an ambiguity in the statute would require that it be construed in Defendant's favor, see *Siddiqui*, 359 F.3d at 1204; *see also Minda*, 851 F.3d at 237 (noting, with respect to another aspect of the statute, that, because Congress's waiver of sovereign immunity must be construed strictly, statutory construction issues must be resolved in the government's favor "to the extent there is any doubt"), here, the statute is not ambiguous.

On this point, the Court disagrees with the Ninth Circuit that the use of the word "plus" introduces ambiguity in subsection 7431(c)(1)(B)(i), for three reasons.  First, in the absence of a statutory definition, terms used in statutes are to be construed in accordance with their "ordinary or natural meaning," *FDIC v. Meyer*, 510 U.S. 471, 476 (1994), and when used as a conjunction, the first ordinary meaning of the word "plus" is "and."  *Plus*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/plus?src=search-dict-box (accessed Mar. 27, 2022).  Reading the word in this way, subsection (B) simply allows for actual damages *and* punitive damages to be combined, and if the sum (or combined amount) of those damages is greater than $1,000, then that sum may be awarded.  The Court therefore agrees with the Fourth Circuit in *Mallas*, that, where a plaintiff's actual damages are zero, it is still possible and permissible for the plaintiff to recover punitive damages, if the reasonable amount of such damages is greater than $1,000.  *See Mallas*, 993 F.2d at 1126.

Second, the further ordinary – and also mathematical – meaning of the word "plus" (again when used as a conjunction) is "in addition to which." *Plus*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/plus?src=search-dict-box (accessed Mar. 27, 2022). The concept of "in addition to" fits particularly well in subsection (1)(B), which, as noted, leads off with the mathematical reference to the "sum" of different types of damages. *See* 26 U.S.C. § 7431(c)(1)(B). In mathematics, a "sum" is, of course, the total of two or more "added" numbers, and it goes without saying the sum need not be zero just because one of the added numbers is zero.

Third, the Court notes that the word "plus" is not only used in Section 7431(c) at the end of subsection (1)(B)(i), but also at the end of subsection (1)(B)(ii) and, again, at the end of subsection (2), and, read as Defendant suggests, the word would make no sense in those other provisions. Even Defendant concedes that, upon its admission of liability, Plaintiff is entitled to costs (as provided in subsection (2)), and Defendant has made no suggestion that costs could be awarded only if an award of punitive damages were made in accordance with the preceding subsection (which ends with the word "plus"). Similarly, Defendant does not suggest that an award of attorneys' fees under subsection (3) would be dependent upon an award of costs made under subsection (2) (which likewise ends with the word "plus"), such that no fees could be awarded in the absence of evidence of costs. As "[a] term appearing in several places in a statutory text is generally read the same way each time it appears," *Ratziaf v. United States*, 510 U.S. 135, 143 (1994), and as the word "plus" in these other subsections would only make sense as meaning "and" or "in addition to," the Court finds that this meaning should be applied throughout the statute, so as to make sense of the whole, *see Deutsche Bank Nat. Trust Co. v. Quicken Loans Inc.*, 810 F.3d 861, 868 (2d Cir. 2015) ("[S]tatutory interpretation must begin

with the plain language, giving all undefined terms their ordinary meaning while attempting to

ascertain how a reasonable reader would understand the statutory text, considered as a whole."

(internal quotation marks, brackets, and citation omitted)).

Finally, the Court's view as to the proper construction of the statute is not altered by the

observation of the district court in *Barrett* that punitive damages are only mentioned in

subsection (1)(B) of the statute (the subsection that also relates to actual damages), and not

subsection (1)(A) (which relates to statutory damages).  *See Barrett*, 917 F. Supp. at 504.

Regardless of whether the statute might have been written another way, it is not ambiguous on its

face.  For the reasons discussed above, the Court has no difficulty construing the statute, as

structured, to mean that, upon a demonstrated Section 6103 violation, a plaintiff is entitled to be

awarded the greater of either (A) $1,000 in statutory damages, or (B) the sum of the plaintiff's

actual and punitive damages.

Accordingly, the Court finds that Plaintiff's failure to plead facts sufficient to raise a

plausible inference that she sustained actual damages does not preclude her from seeking

punitive damages in this case.

### 2.      Plaintiff's Allegations of Gross Negligence Are Sufficient To Survive Defendant's Rule 12(c) Motion.

Defendant also contends that Plaintiff has not pleaded facts capable of rising to the level

of gross negligence, and that her claim for punitive damages must fail, in any event, on that

basis.  The Court disagrees.

It is true that, as characterized by the Second Circuit, the standard for "gross negligence"

is considerably more difficult to meet than the standard for ordinary negligence:

> Gross negligence requires conduct that is 'highly unreasonable and
> which represents an extreme departure from the standards of
> ordinary care . . . to the extent that the danger was either known to

the defendant or so obvious the defendant must have been aware of
it,' that is, 'conduct that evinces a reckless disregard for the rights
of others or smacks of intentional wrongdoing.'

*Minda*, 851 F.3d at 238 (quoting *AMW Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436,

454 (2d Cir. 2009)).  And it may be that, when put to her proof, Plaintiff will not be able to

establish that the conduct of Brideson and Downs (or anyone else at the IRS) departed from

ordinary standards of care to the point that it "evinced a reckless disregard" for Plaintiff's rights.

This case is only at the pleading stage, however, and the Court finds that Plaintiff's allegations,

taken as a whole and accepted as true for purposes of Defendant's motion, could plausibly meet

that standard, such that she should be permitted discovery on the issue.

Of particular note, Plaintiff has not only pleaded that the individual who made the

unauthorized disclosure to Molina (Brideson) had actual, personal knowledge that Molina's

authority had been revoked (*see* Background, *supra*, at Section B(1)), but Plaintiff has *also*

pleaded that, in repeated violation of the IRS's own procedures and the training that they had

presumably received, Brideson and Downs, and perhaps others as well, disregarded every single

one of the numerous safeguards that the IRS had put in place, including at the supervisory level,

to prevent the type of unauthorized disclosure that was made in this case (*see id.*, at

Section B(2)).  Plaintiff acknowledges that "the mere existence of a procedural violation is not,

in and of itself, sufficient to show gross negligence" (Pl. Mem., at 16 (citation omitted)), but she

also cites authority for the proposition that gross negligence may be shown upon evidence that

the IRS blatantly disregarded its own rules or ignored prior training about unauthorized

disclosures (*see id*. (citations omitted)).

Having summarized, above, the allegations that Plaintiff has asserted in her Amended

Complaint regarding the many steps along the way at which IRS staff could have prevented the

unauthorized disclosure, but failed to do so, the Court need not summarize those allegations again here.  Suffice it to say that Defendant's characterization of the pleaded facts – "that there was one simple, albeit continuing error:  the relevant IRS employee, [] Brideson, failed to update the name and address on the Notice of Determination to reflect Plaintiff's current counsel, which error went uncorrected by her supervisor" (Def. Reply Mem., at 7) – downplays and trivializes Plaintiff's allegations.  What Plaintiff has pleaded, in her Amended Complaint, is that the IRS repeatedly ignored its own protocols that were intended to assure that its staff paid attention to what the IRS itself deemed "critical" information regarding the identity of the taxpayer's authorized representative (*see* Am. Compl. ¶ 46).  This suggests that more than a single, "simple" error, and more than a lack of ordinary care.

For these reasons, Defendant's motion for judgment on the pleadings on Plaintiff's claim for punitive damages is denied.

**D.    A Determination Regarding Plaintiff's Entitlement to Attorneys' Fees Would Be Premature at This Point.**

Given that Defendant has admitted liability for a Section 6103 violation, and that Plaintiff may be able to develop an evidentiary record that would support an award of punitive damages for that violation, it is premature for the Court to consider Defendant's final argument – that the Court should reject Plaintiff's claim for attorneys' fees in this action.  (*See* Def. Mem., at 19-20.) The question of whether Plaintiff should be considered the "prevailing party" in this case, meaning the party that has "substantially prevailed" with respect to either "the amount in controversy" or "the most significant issue or set of issues presented" (*see* Background, *supra*, at Section A(2)), cannot be fully addressed until Plaintiff's claim for punitive damages is resolved. Further, the evidentiary record on that claim, once developed, will likely dictate whether Defendant (if, in fact, it failed to follow its own published guidance), can overcome the

32

presumption, under 26 U.S.C. § 7430(c)(4)(B)(ii), that its position was "not [] substantially

justified."  (*See id*.)  Once the merits of Plaintiff's punitive damages claim is determined on a full

record, the Court will be positioned to consider whether an award of attorneys' fees is warranted.

For now, the motion for judgment on the pleadings on that issue must be denied.

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendant's motion for judgment on the pleadings under

Rule 12(c) (Dkt. 38) is granted in part and denied in part, and, based on the admission of liability

in Defendant's Answer, Plaintiff is granted judgment in her favor, in part.  Specifically, on the

parties' pleadings, it is hereby ORDERED that:

1. as Defendant has admitted that it made an unauthorized disclosure of Plaintiff's tax return information, in violation of 26 U.S.C. § 6103, Plaintiff is granted judgment in her favor on the issue of Defendant's liability;

2. as Plaintiff has failed to plead facts capable of giving rise to a plausible inference that she sustained actual damages as a result of the Section 6103 violation, Defendant's motion for judgment in its favor on Plaintiff's claim for actual damages is granted;

3. as Plaintiff has sufficiently alleged that Defendant's unauthorized disclosure was an act of gross negligence, Defendant's motion for judgment on the pleadings in its favor on Plaintiff's claim for punitive damages is denied; and

4. based on the above rulings of the Court, Defendant's motion for judgment on the pleadings in its favor on Plaintiff's claim for attorneys' fees is denied.

The Court will not issue a final judgment in this case until Plaintiff's outstanding claim

for punitive damages is resolved, and, at that time, it will also consider the question of whether

Plaintiff should be awarded attorneys' fees.  No later than April 11, 2022, the parties are directed

to submit a jointly proposed schedule for discovery on any factual issues related to Defendant's

alleged gross negligence.

Dated: New York, New York
       March 28, 2022

                                        SO ORDERED

                                        _____
                                        DEBRA FREEMAN
                                        United States Magistrate Judge